UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,

        PLAINTIFF,

                                           CASE NO. 1:22-cr-701
                                           JUDGE SARA LIOI

v.

MARK BRANT,

        DEFENDANT.

## DEFENDANT'S SENTENCING MEMORANDUM

The factors set forth in 18 U.S.C. § 3553(a) that guide in determining the appropriate sentence based on *United States v. Booker*, 543 U.S. 220 (2005) are undoubtedly well known to this Court, as is the requirement that the Court "impose a sentence sufficient, but not greater than necessary, to comply with" the factors therein. Surely too, is the notion pursuant to *Gall v. United States*, 522 U.S. 38 (2007), that in applying these factors, a sentencing judge "must make an individualized assessment based on the facts presented."

For the reasons set forth below, counsel submits that a sentence of probation would be "sufficient, but not greater than necessary, to comply with the purposes set forth in § 3553(a)." Counsel further submits that there are compelling reasons to impose a sentence that is below the advisory guideline range, which this Court is

empowered to do by way of a downward variance. *United States v. Hussein*, 478 F.3d 318 (6th Cir. 2007).

## I.    Circumstances of the Offense

As detailed in the Presentence Investigation Report (PSIR), Mr. Brant was involved in the business of renting properties to individuals that would grow and ultimately distribute marijuana, in violation of 21 U.S.C. §§ 856(a)(2). Mr. Brant, a self-described "serial entrepreneur," did not make any attempt to conceal this fact. He owned and managed many properties in and around Monroe County, rented them out to individuals who professed a desire to cultivate marijuana, collected rents from those individuals, deposited said rents into his bank accounts, and ultimately paid income taxes on the profits earned from those rental properties and the marijuana related income.

Mr. Brant, like tens of thousands of others in the State of Michigan, saw the marijuana industry as a novel business opportunity, and he treated it as such. When questioned by law enforcement, he did not deny his involvement. Mr. Brant did not attempt to "structure" bank deposits; rather, he plainly and openly deposited whatever sum was collected in the relevant month and then filed the appropriate financial disclosure through his accountants. Ironically, the marijuana related income was but a fraction of the agricultural business within Mr. Brant's portfolio. He was, and still is, involved in sharecropping ventures with soybeans, corn and other vegetables as was outlined in the financial disclosures in his PSIR.

While it is true the plea that Mr. Brant entered arises out of his ownership of property and knowledge of the actions that were undertaken by the individuals who rented these properties, Mr. Brant recognizes and fully acknowledges that any marijuana related activity is a violation of federal law. Although the production and sale of marijuana has been legalized in many ways in the State of Michigan and now in the State of Ohio, Mr. Brant likewise recognizes and acknowledges that this is not without limitation, and again, is a violation of current federal law.

Any federal offense is serious; however, there is undoubtedly a clear trend in this country towards the legalization, or decriminalization, of marijuana, and it is certainly not outside the realm of possibility that marijuana will be legalized on the federal level within this decade. Attorney General Merrick Garland has already taken steps to seek public comment relative to a re-scheduling of the substance, and both sides of the political spectrum have indicated a willingness to pursue this in the coming years.[1]

The citizens of the State of Michigan overwhelmingly approved the legalization of recreational marijuana in November 2018. The State of Ohio legalized medical marijuana in September 2016, and recreational marijuana in November 2023. Neither Mr. Brant nor counsel argue that marijuana is harmless. Marijuana, like any substance,

---

[1] https://apnews.com/article/marijuana-biden-dea-criminal-justice-pot-f833a8dae6ceb31a8658a5d65832a3b8.

can be abused. But it cannot be disputed that the citizens of at least 37 states have determined that the benefits of legalizing marijuana outweigh the harm.[2]

As indicated, Mr. Brant pled guilty to Maintaining a Drug-Involved Premises. He acknowledged that the Michigan produced marijuana was ultimately distributed in and around this Court's jurisdiction in Ohio, and he acknowledged that he profited from those sales. He recognizes that the sentencing guidelines call for a sentence of 30-37 months. Counsel respectfully suggests that such a sentence would be greater than necessary to comply with the purposes set forth in § 3553(a). A sentence ranging from probation to home-confinement would more than satisfy this factor, as it would promote deterrence and adequately penalize Mr. Brant for his conduct. It would likewise take into account the notion that the underlying basis for this crime revolves around a substance that is legalized on the state level in both Michigan and Ohio (as well as over 35 other states) and is widely viewed as benign in terms of its potential for harm.

## II.    Characteristics of the Defendant

To live in this world is to come to understand that human beings are complex and multifaceted. In this vein, one cannot possibly be fairly judged on the basis of but one aspect of his or her life. Mr. Brant is not a drug kingpin. His involvement in the marijuana business, and consequently his admitted crime, was merely a small factor of his professional life.

---

[2] https://reason.com/2022/09/26/more-states-poised-to-ease-marijuana-laws-after-election-day/.

Mr. Brant was born and raised in Monroe, Michigan. He grew up in a strong, two-parent household and experienced a picturesque childhood. In 1986, he married his longtime sweetheart, Karen Brant, and together they raised three children in the Monroe, Michigan home that Mr. Brant and his father quite literally built by hand. Mr. Brant still resides in this home to this day, now by himself, as his kids grew to adult age and matriculated out of the home and into society and his wife sadly passed away in 2020.

Mr. Brant has a criminal contact that is older than the undersigned writer. In 1984[3], Mr. Brant pleaded guilty to Delivery of Misbranded Drugs into Interstate Commerce in the Eastern District of Michigan. The underlying offense involved the sale of over-the-counter diet pills. Mr. Brant was sentenced to two years-probation which he completed without incident.

In the four decades since the 1984 matter, Mr. Brant has managed to build a successful financial estate, which consists largely of residential and commercial real estate, sharecropping, a now defunct llama ranch, and more recently a commercial retail company involving farming equipment. Mr. Brant is a deal-maker. He has been fascinated by business since he was 10 years old and did not ever align himself to one particular industry. He has bought and sold land, livestock, currency, agriculture, tech, commercial farm equipment, vintage automobiles and more. He's thankfully never

---

[3] Undersigned counsel was born in 1986.

5

had an addiction to drugs or alcohol but admits he has been addicted to business for nearly six decades.

Business is not the only thing that defines Mr. Brant. Since 1986, Mr. Brant has been an elected official for the County of Monroe. He began as a township supervisor in 1986 and was elected as a County Commissioner in 2012. He became Chairman of the Board in 2018, and has maintained that position since then. This is his true passion at this phase of his life. It is not a job that he has maintained for the pay. His desire to serve is borne out of his keen sense of giving back to and building up his community. Mr. Brant loves and believes in Monroe, County. He has assisted in its growth and is committed to ensuring that its trajectory remains forward facing. It is a testament to his standing in the community that he will be elected again without challenge in the upcoming election despite this underlying action.

One does not typically survive in politics for four decades without making enemies, but Mr. Brant has seemingly done just that. State Senator Joseph Bellino wrote on Mr. Brant's behalf to describe the "high degree of integrity" that he has seen in both Mr. Brant's personal and professional interactions. (**Exhibit 1, Character References**). He talked about how he and Mr. Brant would constantly talk about their grandchildren together and further noted that Mr. Brant was remorseful for the situation he put himself in, yet prepared to learn from his mistakes.

Mr. Ronald Blank, chairman of the Michigan Manufactured Housing Commission under both republican and democratic Michigan leadership, wrote to

discuss the bridges that Mr. Brant helped build with his company and the City of Monroe in the late 1990s. He not only discussed Mr. Brant's love for his three children and five grandchildren – a constant theme – but also his dedication to achieving a high level of success for his constituents during the course of his commissioner duties.

Ms. Aundrea Armstrong, herself a Deputy Administrator/Chief Financial Officer for the County of Monroe, wrote to highlight Mr. Brant's character. She noted that Mr. Brant is "one of the few [people she has worked with] who did not have a personal agenda but rather an agenda to serve his community." *Id.* It was Mr. Brant's service and strategic planning, in Ms. Armstrong's opinion, that fostered a $1.127 billion dollar increase in valuation to Monroe County's local economy. Ms. Armstrong is aware of this underlying action and noted that while she finds it out of character for Mr. Brant, she is "confident that by taking responsibility for his actions, expressing remorse, and learning from his mistakes, he will be able to move on and continue to make a positive impact in [the Monroe] community." *Id.*

Mr. Michael Bosanac, Administrator/Chief Financial Officer of the County of Monroe, has known Mr. Brant for more than forty years. He wrote and discussed how Mr. Brant and his father helped bring in municipal water for Monroe several decades ago, and how this helped ease the stress of many who at that time were reliant on well water. He further discussed the "civic purpose" that Mr. Brant brought with him to the Board of Commissioners when he was elected and commended him for his "steady

and inclusive leadership style" that has helped bring a "singular focus on performing the duties." *Id.*

Mr. Bosanac also highlighted a little-known fact about Mr. Brant – his philanthropy. In 2022, Mr. Brant donated a key parcel of his privately owned land to create a county trail project/recreational area in Heritage Trail. He did so with absolutely zero fanfare. It was this piece of crucial land that Mr. Brant donated to the County that allowed this public project to move forward into what will become a large scale outdoor recreational area on the Monroe Loop Trail.

### III. The "need for the sentence" to comport with the traditional purposes of punishment.[4]

#### a. Retribution

Punishment is surely a factor in the sentencing calculus. Probation and home confinement, which carries the looming threat of imprisonment, is certainly ample punishment for this particular offense considering both the nature of the crime and the sentences of others in this particular matter, as well as the accompanying forfeiture matter, which resulted in Mr. Brant agreeing to administratively forfeit $305,657.00.

At 68 years old, Mr. Brant has not had a negative contact with law enforcement since the early 1980s. **As outlined in the PSIR, he is a zero-point offender.** His lone

---

[4] The "traditional purposes of punishment … include retribution, rehabilitation, prevention of further crimes by the defendant, and deterrence of the defendant and others who might contemplate committing similar crimes. *Hobbs v. County of Westchester*, 397 F.3d 133, 158 (2d Cir. 2005) (citing 1 W. LaFave, Substantive Criminal Law § 1.5(a)(2d ed.2003).

criminal conviction, as noted, was in 1984. It merits mention that while mandatory minimums are not a factor here, Mr. Brant would likely have qualified for a safety valve reduction on the initial charges. There was **no indication whatsoever that Mr. Brant employed any threat of violence or weapon** in his commission of this crime. He was **not the leader** of the offense, as this general operation existed without a management structure. This offense **did not lead to the death, serious injury, or even minor injury** of any person. Further, although Mr. Brant did not cooperate directly with investigators, he **did not deny his involvement in the ultimate conviction activity** when he was questioned more than four years ago.

### b.  Deterrence - General and Individualized

There is a need for general deterrence, which is the inherent need to fashion a punishment that will deter the public at large from taking the same course of action as did the defendant. It seems reasonable to conclude that a sentence which results in any confinement would serve as a disincentive to others who might otherwise be tempted to engage in similar conduct. There is a need to ensure that businesses are licensed. There is a need to pay proper income taxes. There is also, of course, a need to follow laws designed to ensure the proper distribution of medicine.

Individualized deterrence – the need to dissuade the defendant himself from future illegal conduct – is a simpler determination. Mr. Brant has taken for

responsibility for his actions and is sincerely remorseful. Given his age, standing within his community and his work in the public sector, it is extraordinarily unlikely that Mr. Brant will need to serve a custodial sentence in order to deter him from any future criminal behavior. He understands now that his behavior was inapposite to federal criminal law, and he has corrected this behavior.

### c.  Protection of the Public

Counsel respectfully submits that there is simply no reason for the Court to believe that society needs protection from Mr. Brant. Indeed, "[t]he rationale for incapacitation is to allow society to 'protect itself from persons deemed dangerous because of their past criminal history.'" *Allen v. Woodford*, 395 F.3d 979, 1009 (9th Cir. 2004) (citing 1 W. LaFave & A. Scott, Substantive Criminal Law 38 § 1.5 (2003)). All things considered, society in whole would suffer if Mr. Brant were removed from the community. He is a dedicated and competent public servant. His political and philanthropic efforts have and will continue to benefit his community and those around him.

### d.  Providing the defendant with needed educational or vocational training, medical care, or other correctional treatment.

As detailed in the PSIR, Mr. Brant has no need for treatment or vocational treatment. His physical health is solid given his age and lifestyle.

### e.  The Guideline range and any pertinent policy statements.

Mr. Brant agrees that his total offense level should be 19. His criminal history category is I. This would yield an advisory guideline range of 30-37 months.

With respect to the seriousness of the offense, while Mr. Brant obviously violated federal law by maintaining rental property used to cultivate marijuana, it bears observing that this is a substance that 37 states, including this very own, have legalized or decriminalized in some capacity.

Again, none of the trends and shifts in public opinion negate the fact that Mr. Brant violated federal law. However, in determining the seriousness of the offense, it is incumbent on counsel to point out the reality that popular and legal opinion regarding the seriousness of marijuana have shifted dramatically since the Guidelines were promulgated. Notably, nobody was physically injured or harmed due to Mr. Brant's crimes. Mr. Brant did not utilize violence or force as a means of transacting. He likewise did not utilize his standing as a public official to do so.

It bears mentioning that Ohio's very own congressman, David Joyce, has tirelessly advocated for the re-scheduling of cannabis on the federal level for years.[5] He has repudiated the "unjust war on cannabis," and has been pivotal in advancing legislation through Congress on the topic.

These facts taken together lead to the conclusion that a sentence within or approaching the advisory Guidelines is something of an anachronism. The seriousness of Mr. Brant's crimes could certainly be addressed through a period of probation, or,

---

[5] https://joyce.house.gov/posts/joyce-statement-on-white-house-cannabis-announcements.

at worse, home confinement with the impending threat of prison in the event that Mr. Brant strays from the course. This is not an insignificant penalty. For the reasons outlined above, a prison sentence would hurt Mr. Brant's community, children and grandchildren more than it would hurt him. He is not a danger to society and he can repay his debt to society in a way that does not unnecessarily fill a prison bed.

**f. The need to avoid unwarranted sentencing disparity.**

This Court is by no means bound to any particular range. Marijuana offenses have been given a wide variety of sentences stemming from deferred prosecution to prison for years. A sentence of probation or home confinement would not create a disparity among defendants with similar records; in fact, it would not even create a disparity among Mr. Brant and his co-defendant.

**IV.  Conclusion**

Mr. Brant fully appreciates the gravity of the situation at hand, and readily admits that his actions were illegal and wrong. He does not make excuses for his actions; rather, he has learned from his grievous lapse in judgment and wishes to use this incident as way to deter others around him from wrongful or harmful behavior. His actions were an aberration and not a true indication of his character as a hard-worker, a loving husband and father, and a valuable member of the community. The entire Defense—his attorneys, his family, and his friends—ask this Honorable Court to fairly and justly weigh the facts of this case, the character of Mr. Brant, and the positive impact he has, and will continue to have, on his family and community.

**WHEREFORE**, the Defendant, Mark Brant, respectfully requests that this Honorable Court take the above and all other relevant information into consideration during the imposition of sentence.

Respectfully submitted,

s/ Vincent J. Haisha
TODD F. FLOOD (P58555)
VINCENT J. HAISHA (76506)
Flood Law, PLLC
Attorneys for Defendant
155 W. Congress Street, Suite 350
Detroit, MI 48226
Phone: (248) 547-1032
Email: vhaisha@floodlaw.com

DATED: September 8, 2024

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was electronically served to counsel for the Defendant on this 8th day of September 2024 via the Court's electronic filing system.

13

_s/Vincent J. Haisha_
Vincent J. Haisha

**EXHIBIT 1**
Character References



**Michigan Senate**
## Joseph N. Bellino Jr.
State Senator
16th District

**Committees:**
Transportation and Infrastructure, MVC
Energy and Environment
Regulatory Affairs

P.O. Box 30036
Lansing, MI 48909-7536
Phone: (517) 373-5932
Fax: (517) 373-5944
senjbellino@senate.michigan.gov

June 5, 2024

To Whom It May Concern
c/o Vincent J. Haisha
155 W. Congress St, Ste 350
Detroit, MI 48226

To Whom It May Concern:

My name is Joseph Bellino and I currently serve as the elected State Senator for Michigan's 16th State Senate district. I have had the pleasure of knowing Mark Brant and his family for 25+ years. During that time, Mark has always been a go to friend and partner for me with whom I have worked with on multiple community projects.

Mark and I have developed a genuine and loyal friendship. He is a friend who makes himself available no matter how busy he is and is also someone I can trust and always count on. He is reliable and provides unconditional support always. We have shared many lunches, dinners and family milestones and have traveled together also. His insight and wisdom have helped me through some very personal and difficult times.

I can also attest to Mark the family man. During the time I have known Mark, he has always been a devoted husband to his wonderful wife and a dedicated, attentive, and involved father. He would always tell me how he looked forward to spending his time off with his family. Each week we would compare notes on our kids and grandkids extracurricular activities and we both agreed how time consuming they were but how fun and rewarding it was too.

I believe, based on my observations, Mark has always possessed a high degree of integrity and honesty in his personal and professional interactions. I was surprised to hear of the issues that Mark is facing and find this to be very out of character for him. I have never known Mark to ever cause harm to any individual. The Mark I know is very caring and compassionate and he would go out of his way to help people, not hurt them. Mark is also very contemplative, and I am confident that by him taking responsibility for his actions, expressing remorse and his desire to learn from his mistakes will enable him to make any constructive personal changes that he needs and make a positive impact wherever life may take him.

Thank you for your time and consideration.

Sincerely,

Joseph Bellino
State Senator – District 16

1285 Hollywood Dr.
Monroe, MI 48162

734-731-4142
jbellinojr@gmail.com

 

Ronald Blank
4855 E. Burt Lake Road
Cheboygan, MI 49721

June 4, 2024

RE: Letter of Reference for Mark Brant

To Whom It May Concern:

As a brief background on myself, I am a lifelong Michigan resident, having spent a 40-year career as a developer and operator of manufactured housing communities. During my career I enjoyed the opportunity to meet many people in both state and local government. I was appointed to the Michigan Manufactured Housing Commission by Governors Granholm and Snyder, a position I chaired for my final 7 years.

Over the years, many of my business relationships became personal friendships, as mine did with Mark Brant. I first met Mark Brant in the late 90's as a result of my purchase of land for one of our communities in Raisinville Township, at that time Mark Brant was the Township Supervisor. While the relationship began in typical fashion, with the township denying our development it eventually turned into a concerted effort that turned our Raisin Ridge MHC development into the 2001 recipient of the MHI National Community of the Year. The suggestions and implementation of Mr. Brant helped us achieve this award. I credit this to his understanding of what would be best received by Monroe County residents while at the same time negotiating a settlement between my company and the township for what was best for township residents and nearby property owners.

Our business relationship became a friendship over the years, we enjoyed sharing our personal stories, that of our families ups and downs, business experiences and life. The attraction to Mark's ability to read people and create successful business situations was fascinating. Mark had the innate ability to identify opportunities that no one else was yet thinking about, a trendsetter at a minimum, a natural visionary. For my 10 cents, it is my opinion that jealous people feel the need to try and knock successful people off of their perch whenever possible. While Mark Brant has many admirers he had his share of jealous detractors. Human nature at its worst, but Mark has always risen above as I hope he will in what he is currently faced with and what has prompted me to write this letter.

Mark Brant possesses a high degree of integrity and compassion. I have witnessed his ability and desire to help people, he is an open book to his knowledge and experiences. He is adored by his 3 children and 5 grandchildren, all of which I have had the pleasure to meet and spend time with. He has created an enviable bond with his family. With his parents now deceased I see him as the patriarch of his family and many siblings.

While I do not know all the details of what brings us here today, I hope that the court takes into account who this person is, the people he has helped in life, and his high level of character and compassion.

Please do not hesitate to contact me if you require any further information.

Respectfully,

Ronald Blank

June 4, 2024

To Whom It May Concern
c/o Vincent J. Haisha
155 W. Congress St, Ste 350
Detroit, MI 48226

My name is Aundrea Armstrong; I have been with the County of Monroe for twenty-three years, where I have worked my way up to my current position of Deputy Administrator/Chief Financial Officer. The County Board consists of nine commissioners elected by direct vote from single-member districts every even-numbered year. I have had the privilege of knowing and working with Mark Brant for the last eleven years. Mark was elected as a commissioner to the Monroe County Board of Commissioners, effective January 1, 2013. Over the last twenty-three years, I have worked with many different elected officials who run for office for many different reasons; Mark is one of the few who did not have a personal agenda but rather an agenda to serve his community. Over the last six years, Mark has served as the Chairman of the Board, where he leads fellow board members and county staff to serve our community residents and businesses to the best of our ability.

Mark's leadership and community commitment have led to the successful implementation of economic, strategic plans that have delivered a significant $1.127 billion additional value to our local economy. His passion for creating opportunities has advanced our community and positioned Monroe County as a regional leader, attracting new business and fostering an environment where citizens want to stay and raise their families. The County of Monroe is fortunate to have a leader with the vision to bring new economic activity and opportunities to our community. Mark's work ethic, integrity, and perseverance inspire you to want to work with him to continue advancing initiatives that enhance our community. Mark's leadership style fosters collaboration and communication. Under his guidance, we have worked hand in hand with local entities to build a resilient community, offering opportunities that directly benefit the citizens of Monroe County.

Mark's leadership and mentorship have been instrumental in shaping my professional career and providing me with support and guidance. I have encountered professional and personal challenges throughout the years, and Mark's friendship and support during difficult times have been invaluable. His encouragement has helped reduce my stress levels and allowed me to focus on my family when they needed me the most.

I understand that Mark has had legal trouble recently, which I find out of character for him. Knowing him as I do, Mark is contemplative, and I am confident that by taking responsibility for his actions, expressing remorse, and learning from his mistakes, he will be able to move on and continue to make a positive impact in our community.

Thank you for time and consideration.

Sincerely,

Aundrea Armstrong
11205 Summerfield Road
Petersburg, MI 49270
734-915-6838
aundrealarmstrong@gmail.co

June 4, 2024


To Whom It May Concern:
c/o Vincent J. Haisha
155 West Congress Street
Suite 350
Detroit, MI 48226

**Re: Character Statement on behalf of Mark Brant**

For the past forty (40) years, I have been employed in the community where I was born and raised. My decision to accept a job with the County of Monroe, Michigan was a good decision and the County has been a great employer throughout my career. During my employment, I have rose through the ranks and for the past eleven (11) years have been the chief administrative officer and financial officer. Mark Brant was elected as a county commissioner in 2013 and represents the district where my mother still lives and where I was raised. Mark and I had known each other in a limited capacity since high school as we both went to the same school. My older brother and sister are a little closer in age and attended class together. But I have known Mark and to a larger extent his siblings since I was in grade school. One sister was in the same circle of friends and another one a year older. Mark and his siblings all shared a character trait of being studious, outgoing and friendly and supportive of school activities.

Prior to being elected county commissioner, Mark was the elected township supervisor, again in the same township of my parents' home in Raisinville Township. My dad and Mark had mutual interests in serving their community by helping to bring much needed municipal water to the township. Growing up, water was always a concern with a well and a large family. Mark and my dad understood the value of a reliable water supply for homes and businesses and worked to bring water where residents supported that goal.

When Mark joined the County Board of Commissioners, he brought that civic purpose with him and I have had the privilege of working with him and the rest of the Board in achieving goals for the residents and businesses of our county. After a couple of terms on the Board, Mark's elected colleagues saw his leadership first hand, learned of his steady and measured approach to the challenges that came to the governing board and unanimously elected him as their leader among leaders. For me it has been both a learning and comforting experience to work with Mark as Chairman of the Board these past 4 years. I have been able to know him more closely and walk the same path on importance issues that he has led in helping improve the quality of life for residents of our County. His steady and inclusive leadership style has created a unified governing Board that is looked upon across our communities as a model in governance. Public meetings under his leadership are professional and focused with a singular focus on performing the duties of elected leaders. And while the meetings are a model of efficiency, members of the public are afforded a welcoming environment to participate and express to the governing Board their concerns and voice what is in their hearts. If action is warranted, he ensures each citizen receives a response. It is how he views his role as an elected public official.

In the preceding paragraph I noted the quality of life initiatives Mark has led. It is clear he wants to create a better community for the citizens he serves. His vision is clear to all who work with him that leaving a legacy of a community with opportunities for everyone whether it be in quality of life projects like trails, river access or other recreation amenities, the outcomes will serve generations that follow. What impresses me about Mark is his willingness to be the catalyst of change for good. As a leader, he sees what is possible, but sees it through a series of accomplishments on the path to the larger goal. As one who is committed to his ideals, Mark has donated a key parcel of land that now creates a path to realize our community vision for a trail project. This trail project represents the largest investment ever by the County into a recreation or quality of life project. The donated land will serve a pivotal role as a trailhead park with access to the

June 4, 2024
Page 2
Character Statement

river. Mark's vision is to create this site from vacant land and ensuring people of all abilities have the same opportunities to experience the outdoor recreational assets in our county.

Since joining the elected governing Board, in my role I have never received a call, letter, or communication expressing any concern or complaint about Mark. To the contrary, as I work with and engage with other community leaders, what is communicated is the value Mark brings with his leadership and vision for advancing the best interests of our communities. I witness his commitment to our community in the way he leads the governing board bringing common sense approaches and a collaborative style to his role. My experiences with Mark is that he will always do what is best no matter any political pressures or requests for favors. He will not back away or sidestep the sometimes difficult decisions that have to be made. He represents the County as its chief elected executive and does so in a professional manner that exemplifies citizen centric good governance.

And while Mark is a dedicated public official, he is grounded first in his obligation to family. Whether supporting them in any number of ways to teaching his grandchildren lessons in civics by attending a County Board meeting or two, he shows the value of supporting the community you live in. As I shared with Mark news that my father was in the final phase of his life and what our family was coming to understand, he was first interested in ensuring I was there for my family. As we met for County business, he was quick to inquire how my family was doing especially my father and of course my mom. His compassion and sincere interest is evident not just in my interactions, but I see it with others in his business circle where he could easily just move into work of the day. But he never does. He is first concerned on a personal level and that is a great personal trait of any leader or person.

I have come to know Mark as a man of his word and if he commits to something, he will see it through no matter the challenge. To me, that demonstrates a level of assurance in someone to know they will be part of the team whatever the future may hold or how we are challenged. That can be missing in today's friendships and partnerships. It is not missing in Mark. And while life can be a difficult road at times, it was strange for me to hear of Mark's trouble. It is out of character for the person I know him to be.  I know he regrets but yet accepts responsibility for any missteps that led him to this mistake. It is a mistake and an outlier of the great things he has done for those around him and what I expect in the future.

As I look ahead, I see Mark continuing to do the best he can for his community and learn from this one mistake. We all desire to move forward and note this not as a lasting setback but as an experience to learn from. If he has not already done so, I expect he will express remorse and his desire to learn and that he has already made the constructive personal changes in his life.

Thank you for your consideration of my statement.

Sincerely,

Michael Bosanac

Administrator/Chief Financial Officer
County of Monroe, Michigan
125 East Second Street
Monroe, MI 48161
(734)-240-7267
michael_bosanac@monroemi.org